**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NETLENS TECHNOLOGIES INC.<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No.7:25-cv-311<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AGAINST MICROSOFT CORPORATION**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff NetLens Technologies Inc. ("NetLens" or "Plaintiff") makes the following allegations against Defendant Microsoft Corporation ("Defendant" or "Microsoft"):

## INTRODUCTION

1. This is an action for infringement of four United States Patents directed to foundational technologies in cloud computing and virtualization.

2. NetLens is the owner of U.S. Patent No. 8,910,154 ("the 154 Patent"), U.S. Patent No. 9,417,901 ("the 901 Patent"), U.S. Patent No. 9,705,745 ("the 745 Patent"), and U.S. Patent No. 10,063,630 ("the 630 Patent") (collectively "the asserted patents"). These patents are directed to fundamental innovations and concrete, non-conventional improvements in virtualization, cloud monitoring, network quality of service, and service orchestration, including: (i) diagnostic managers directly associated with individual virtual instances, (ii) dynamic quality-of-service enforcement across virtual machine flows, (iii) programmable creation of both basic and user-

defined virtual monitors, and (iv) orchestration of distributed services across virtual networks. These inventions solved specific technological problems and are not abstract ideas.

3. The asserted patents address critical technical challenges in distributed computing, including, for example, obtaining diagnostic information from virtual machines and instances, enforcing fairness and Quality of Service ("QoS") in shared cloud environments, scaling monitoring functions for software-defined networks, and orchestrating services across distributed cloud resources.

4. Microsoft has incorporated these patented technologies into its Azure platform, both in its legacy architecture built on, e.g., Hyper-V, System Center Virtual Machine Manager ("SCVMM"), Service Fabric, Azure Monitor, Packet Monitor, and Virtual Filtering Platform ("VFP"), and in its more recent Azure Kubernetes Service ("AKS"), which implements the same solutions through, e.g., Kubernetes, kubelet, Horizontal Pod Autoscaler, Istio (via, for example, Envoy sidecars and related Istio control-plane functions), Envoy, Prometheus, Container Insights, YAML manifests, and related components.

5. Microsoft has continuously developed, maintained, and deployed its Hyper-V, SCVMM, and Windows Server SDN technologies during and after the issuance of the Asserted Patents, and has integrated these architectures into its modern Azure stack (including Azure Monitor, Azure Kubernetes Service, and related services). References to Microsoft's legacy products herein describe technologies that continued in substantially similar form in later versions and deployments during the relevant infringement period.

6. Microsoft has known of the 154 Patent since at least the filing of the original complaint. Despite this knowledge, Microsoft has continued to make, use, offer to sell, and sell products and services that infringe at least the 154 Patent.

## THE PARTIES

7. NetLens Technologies Inc. is a corporation organized and existing under the laws of the South Korea, having its primary place of business at A-1306, 83, Nonhyeon-ro, Seocho-gu, Seoul, Republic of Korea, 06775.

8. Microsoft is a corporation organized and existing under the laws of the state of Washington, with a principal place of business located at 1 Microsoft Way, Redmon, Washington 98052-8300. Microsoft is registered to do business in Texas and can be served via its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701-3218. Microsoft maintains a permanent physical presence within the Western District of Texas, conducting business from at least its locations at: 10900 Stonelake Boulevard, Suite 225, Austin, Texas 78759; Concord Park II 401 East Sonterra Boulevard, Suite 300, San Antonio, Texas 78258; and, on information and belief, other locations in and around the Austin and San Antonio areas.

## JURISDICTION AND VENUE

9. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. Microsoft is subject to personal jurisdiction in this District. Microsoft is incorporated under the laws of the State of Washington and maintains its principal place of business in Redmond, Washington. Microsoft, however, is registered to do business in Texas, maintains multiple offices in this District, operates large-scale Azure datacenter infrastructure here, employs thousands of personnel here, and continuously and systematically conducts business here. Microsoft's in-district presence includes engineering, sales, support, partner, and datacenter

operations that directly involve the design, promotion, deployment, and support of the accused products and services.

11. Venue is proper in this District under 28 U.S.C. § 1400(b) because Microsoft has committed acts of infringement and has a regular and established place of business in this District.

12. Microsoft maintains permanent offices in this District. Microsoft's Austin office at 10900 Stonelake Blvd., Suite 225, Austin, Texas 78759 and San Antonio office at 401 E Sonterra Blvd., Suite 300, San Antonio, Texas 78258 are listed on Microsoft's official U.S. office directory. These facilities host Microsoft employees who market, sell, and support Azure services and enterprise virtualization technologies, including Azure Kubernetes Service ("AKS"), Istio-based service mesh integrations, Azure Monitor, Hyper-V, System Center Virtual Machine Manager ("SCVMM"), and Service Fabric. Microsoft also operates a large multi-building campus in North Austin, publicly described as one of Microsoft's largest U.S. hubs, where thousands of employees (including Azure engineers) are based.

13. Microsoft also operates extensive Azure datacenter facilities in the Greater San Antonio area, which anchor the Azure South Central US region. Microsoft has acknowledged publicly that it "operates datacenters in the counties of Bexar and Medina, in the Greater San Antonio area."[1] These facilities constitute multiple, physically distinct datacenters that together provide the South Central US region. Microsoft has announced the accessibility of Availability Zones in South Central US, which by definition requires at least three independent datacenters in the San Antonio area. Microsoft's datacenter footprint here is massive, ongoing, and expanding. In 2024 to 2025, press and local filings confirmed new campuses in Castroville (Medina County)

[1] https://local.microsoft.com/communities/americas/greater-san-antonio/

with datacenter projects labeled SAT89, SAT90, SAT93, and SAT94, representing hundreds of millions of dollars of investment.

14. The nexus between Microsoft's San Antonio datacenters and the accused technologies is direct and undeniable. In September 2018, a lightning strike in San Antonio disabled cooling systems at a Microsoft Azure datacenter, causing a cascading outage of the South Central US region.[2] That outage disrupted Azure Kubernetes Service, Azure networking, and Azure Monitor—demonstrating that the accused orchestration and monitoring technologies operate from San Antonio-based facilities. On information and belief, customers in Austin, San Antonio, Waco, and throughout this District deploy AKS clusters to the South Central US region, where workloads are hosted on Microsoft's San Antonio datacenters. Microsoft itself instructs customers that when they deploy an AKS cluster, they can choose an Azure region, such as South Central US, where the cluster will be created.[3] Microsoft documentation further instructs on deploying AKS across South Central US Availability Zones to ensure resilience[4], underscoring that infringing orchestration, monitoring, and diagnostic operations are performed from Microsoft's datacenters in this District.

15. Microsoft also directly integrates and promotes the Istio service mesh on AKS in this District. Microsoft's documentation, Install and use the Istio-based service mesh add-on for AKS[5], instructs customers to deploy Istiod and Envoy sidecars into AKS clusters, and to use Azure Monitor's Managed Prometheus and Azure Managed Grafana to collect and visualize Istio

---

[2] E.g., https://availabilitydigest.com/public_articles/1312/microsoft_data_center_outage.pdf; https://www.geekwire.com/2018/microsoft-releases-details-last-weeks-big-azure-outage-servers-damaged-no-data- lost/

[3] E.g., https://learn.microsoft.com/en-us/azure/aks/learn/quick-kubernetes-deploy-portal?tabs=azure-cli

[4] E.g., https://learn.microsoft.com/en-us/azure/aks/reliability-availability-zones-configure

[5] E.g., https://learn.microsoft.com/en-us/azure/aks/istio-about

metrics.[6] These services are provisioned regionally, including in the South Central US region, and are run by customers in this District. On information and belief, Microsoft personnel based in Austin and San Antonio promote and support Istio deployments on AKS, and Microsoft has hosted hybrid events and partner workshops in Austin specifically promoting Kubernetes, Istio, and Azure Monitor to Texas customers.

16. Microsoft's non-Kubernetes virtualization stack is equally present in this District. Microsoft promotes and supports Hyper-V, SCVMM, and Service Fabric from its Austin and San Antonio offices. On information and belief, Microsoft personnel in this District market these technologies to enterprise and public-sector customers, including universities and agencies in Texas. These products implement the same diagnostic, monitoring, and orchestration functionalities claimed in the Asserted Patents and are actively marketed through local offices and Texas-based partners. On information and belief, Microsoft's partner and community pages reflect ongoing Texas-based events hosted at its Austin office, including Azure hybrid cloud and virtualization seminars. On information and belief, Microsoft has continued to market, deploy, and support these technologies from this District during and after the issuance of the Asserted Patents.

17. Microsoft also employs Azure personnel who live and work in the greater Austin and San Antonio areas. On information and belief, publicly available profiles identify: (i) an Azure Cloud Engineer[7] in Austin, (ii) a Program Manager[8] for Microsoft Azure in Austin, (iii) an Azure

---

[6] E.g., https://learn.microsoft.com/en-us/azure/aks/istio-about; https://learn.microsoft.com/en-us/azure/aks/istio-deploy-addon
[7] E.g., https://www.linkedin.com/in/sang-hoon-y-99a0544/
[8] E.g., https://www.linkedin.com/in/uttaralokray/

Cloud Specialist[9] in Austin, (iv) a Support Escalation Engineer[10] for Microsoft Azure in Austin, and (v) a Partner Technology Strategist[11] with Azure expertise in Austin. On information and belief, these employees' responsibilities include engineering, solutions architecture, and customer support for Azure Kubernetes Service, Istio integrations, Azure Monitor, and related products. Their work ties directly to the accused services and confirms that Microsoft conducts infringing Azure operations from within this District. Moreover, on information and belief, Microsoft employees in the greater Austin and San Antonio areas actively develop, test, and operate the accused products, including Azure Kubernetes Service (AKS), Azure Service Fabric, Azure Virtual Filtering Platform (VFP), and System Center Virtual Machine Manager (SCVMM). These activities directly tie Microsoft's infringing conduct to this District.

18. Microsoft has committed and continues to commit acts of infringement in this District. On information and belief, customers in Austin, San Antonio, and Waco deploy AKS clusters in South Central US, enable Istio add-ons, configure Azure Monitor and Container Insights, and operate Hyper-V and SCVMM environments. These infringing workloads, telemetry, and orchestration functions are physically processed in Microsoft's San Antonio datacenters and are marketed and supported from its Austin and San Antonio offices. Microsoft has induced infringement by providing documentation, tutorials, regional deployment guidance, and customer support aimed specifically at customers in this District.

19. Accordingly, Microsoft has regular and established places of business in the Western District of Texas, has committed acts of infringement here, and continues to expand its

---

[9] E.g., https://www.linkedin.com/in/beau-faith-dowd-306a7313b/; https://www.linkedin.com/in/chris-garyet/

[10] E.g., https://www.linkedin.com/in/chauhanarpit23/; https://www.linkedin.com/in/christina-herrera/

[11] E.g., https://www.linkedin.com/in/simeon-hood-930007149/

operations here. Venue is therefore proper under 28 U.S.C. § 1400(b). The scale of Microsoft's Austin campus, the presence of multiple San Antonio-area datacenters, the South Central US region's centrality to AKS and Istio, the history of outages proving those services operate from San Antonio, and Microsoft's ongoing expansion and marketing in this District demonstrate a powerful nexus between Microsoft's infringing conduct and this District.

## BACKGROUND

## NETLENS'S INVENTIONS AND MICROSOFT'S MISAPPROPRIATION

20. In the early days of virtualization, virtual machines were effectively sealed "black boxes." If a virtual machine failed, operators often had no meaningful way to determine whether the operating system or hosted applications were running correctly. Diagnostic tools were rudimentary. Reset operations were blunt instruments that could only restart the VM as a whole, often without insight into the root cause of the problem. Diagnosing faults was slow, error-prone, and disruptive, frequently leading to downtime and lost productivity.

21. As cloud computing expanded, the technical challenges compounded. Early virtualization platforms lacked visibility into the internal state of workloads, leaving providers and customers unable to perform application-aware diagnostics. In shared cloud environments, multiple tenants competed for finite resources, yet there was no effective mechanism to guarantee fairness or to prevent one tenant's workloads from overwhelming another's. At the network level, monitoring traffic across distributed and dynamic environments risked exhausting system capacity. And as services became increasingly distributed, orchestrating workloads across many servers required fragile manual coordination, prone to misconfiguration and failure.

22. Gaps in scaling and reliability meant that cloud computing was difficult to scale reliably. A single customer's workload could starve others of bandwidth. Network monitoring

itself could become a bottleneck, overwhelming the system with monitoring data. Service orchestration across clusters of servers required administrators to manually stitch together deployment scripts, network configurations, and monitoring dashboards—an error-prone process unsuited to mission-critical applications. Without new technological solutions, cloud computing could not deliver the reliability, fairness, and manageability that enterprise customers required.

23. The inventors of the asserted patents addressed these challenges head-on. The asserted patents disclose and claim technical solutions that made modern, reliable cloud computing possible. The 154 Patent discloses service managers associated with each virtual instance, enabling application-aware diagnostics and reset operations through a unified control interface. The 901 Patent discloses a switch architecture that enforces Quality of Service ("QoS") guarantees at both the virtual machine and individual flow levels, ensuring fairness in multi-tenant cloud environments. The 745 Patent claims methods for virtualizing network monitoring through dynamically created basic and user-defined virtual monitors that scale according to demand. The 630 Patent teaches declarative orchestration: receiving service profiles, generating service specifications, establishing flows, and transmitting execution commands across distributed resources.

24. Collectively, these inventions transformed virtualization and cloud computing. The 154 Patent solved the problem of opaque VMs by enabling detailed, instance-specific diagnostics and controlled reset operations. The 901 Patent introduced per-tenant and per-flow QoS enforcement, guaranteeing fair allocation of bandwidth and resources in multi-tenant fabrics. The 745 Patent pioneered the use of dynamic virtual monitors—monitoring constructs that could be created, configured, and scaled programmatically rather than manually. The 630 Patent provided

a declarative orchestration model that allowed services to be specified once and executed reliably across distributed nodes, reducing complexity and error.

25. These patented technologies became the blueprint for reliable, enterprise-grade cloud platforms. By making virtual instances transparent and controllable, ensuring fairness among tenants, virtualizing network monitoring, and automating service orchestration, the technologies described in the asserted patents enable the scalability and dependability that customers now expect from modern cloud services.

26. Microsoft built its Azure platform using precisely these solutions. In its legacy Azure stack, Microsoft deployed the Azure Monitor Agent (AMA) inside every VM, functioning as the per-instance service manager described in the 154 Patent. Through Hyper-V Integration Services and SCVMM, Microsoft enabled management stations to issue diagnostic requests and reset commands to VMs through a unified interface. Using Hyper-V's Virtual Filtering Platform (VFP) and the Azure Network Controller, Microsoft enforced per-VM and per-flow QoS, as the 901 Patent teaches. Through System Center monitoring tools and Packet Monitor (PktMon), Microsoft implemented both basic and user-defined monitoring constructs, satisfying the 745 Patent. With Azure Service Fabric, Microsoft adopted declarative orchestration, using manifests as service profiles, resource managers to generate specifications, and service execution commands to deploy flows across nodes, as in the 630 Patent. These legacy components and their successors remained in active development and commercial deployment during and after the issuance of the Asserted Patents.

27. In its Kubernetes-based Azure Kubernetes Service ("AKS"), Microsoft implemented the same patented solutions in a new architecture. Kubelets and AMA DaemonSets act as per-node service managers, receiving diagnostic requests through the API server and

transmitting collected data back to Azure Monitor, just as in the 154 Patent. Horizontal Pod Autoscalers (HPAs) send reset or redeployment commands through the same control path, mirroring the unified diagnostic/reset interface of the 154 Patent. The Azure SDN fabric, coupled with VFP, enforces per-node and per-flow QoS, just as the 901 Patent requires. Istio service mesh and Envoy proxies provide baseline monitoring, while Prometheus and Fluentd allow user-defined monitoring, directly paralleling the dynamic monitors of the 745 Patent. Kubernetes manifests, parsed by the API server into specifications stored in etcd, establish flows through Services and Ingress, with execution commands issued by the scheduler and kubelets, implementing the orchestration model of the 630 Patent.

28. Microsoft's infringement is not incidental. It is systematic, pervasive, and ongoing. In both its legacy Azure environment and its Kubernetes-based AKS service, Microsoft has integrated NetLens's patented technologies into the core of its platform. Microsoft has done so using NetLens's inventions to solve precisely the technical challenges that once limited virtualization and distributed cloud computing.

29. Any references in this Complaint to earlier releases of Microsoft products are made to describe the operation of technologies that continued in substantially similar form in later versions and deployments. NetLens' infringement contentions encompass Microsoft's continuing implementations during and after the issuance of the Asserted Patents.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,910,154

30. NetLens realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

31. NetLens owns all rights, title, and interest in U.S. Patent No. 8,910,154, titled "Obtaining Diagnostic Information in a Virtual Environment," which issued on December 9, 2014. A true and correct copy of the 154 Patent is attached as **Exhibit 1**.

32. The technology disclosed in the 154 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 154 Patent.

33. The 154 Patent provides a technological solution to a fundamentally technological problem: obtaining diagnostic information and controlling virtual instances in a distributed computing environment. As explained in the specification, the invention allows "application-aware white-box testing of the services running in the virtual instances." Ex. 1 at 4:33–35. Without the claimed service manager modules, "the virtualization system is application unaware and thus not able to verify and validate the current operation of an instance." *Id.* at 4:35–38. The patent explains that white-box testing, unlike black-box testing, permits detailed analysis of the internal state of a virtual instance to determine whether an application is running and functioning correctly. *Id.* at 2:49–61.

34. On information and belief, Microsoft makes, uses, offers for sale, sells, and/or imports products and services ("154 Accused Products") that, as developed, maintained, and deployed during and after the issuance of the Asserted Patents, employ virtual instances and service managers in ways that directly infringe one or more claims of the 154 Patent. Such 154 Accused Products include, without limitation: Microsoft Azure, Azure Virtual Machines, Azure Monitor, Azure Monitor Agent, Azure Kubernetes Service ("AKS"), Azure Virtual Desktop, Windows 365, Azure VMware Solution, Hyper-V, Data Science Virtual Machine, SQL Server, SharePoint

Server, Exchange Server, BizTalk Server, and Dynamics AX. NetLens' contentions include Microsoft's continuing implementations of these products during the relevant infringement period.

35. Microsoft directly infringes the 154 Patent by operating and testing Azure Monitor, Hyper-V, SCVMM, and Azure Virtual Machines, as well as Kubernetes-based systems including AKS, kubelet, Istio, Container Insights, and the Horizontal Pod Autoscaler. Microsoft also induces infringement by instructing and encouraging its customers to use these products in ways that practice the claimed inventions, including through technical documentation, training materials, and default configurations. Microsoft further contributes to infringement by supplying components such as the Azure Guest Agent, kube-proxy, and monitoring agents that have no substantial non-infringing use.

36. Microsoft's infringement is attributable to its direction and control over the 154 Accused Products. Microsoft conditions on their infringing use, provides detailed instructions for such use, and establishes the timing and manner of operation.

37. Microsoft also knowingly and intentionally induces infringement of the 154 Patent in violation of 35 U.S.C. § 271(b). Microsoft has had knowledge of the 154 Patent and the infringing nature of the 154 Accused Products at least as of service of the original Complaint. Despite this knowledge, Microsoft has actively encouraged and instructed its customers to use the 154 Accused Products in ways that directly infringe, including through technical documentation, training materials, and marketing directed to end users.

38. Microsoft has further contributorily infringed, and continues to contributorily infringe, the 154 Patent in violation of 35 U.S.C. § 271(c). The 154 Accused Products are material to practicing the inventions of the 154 Patent, are not staple articles of commerce, and have no substantial non-infringing uses.

39. The Accused Products satisfy each and every limitation of at least one claim of the 154 Patent. An exemplary claim chart mapping independent claim 1 to representative 154 Accused Products is attached as **Exhibit 2A**. Another exemplary claim chart is attached as **Exhibit 2B**. Yet a further exemplary claim chart is attached as **Exhibit 2C**. NetLens reserves the right to identify additional claim mappings.

40. By making, using, offering for sale, selling, and/or importing the 154 Accused Products, Microsoft has injured NetLens and is liable for infringement under 35 U.S.C. § 271.

41. As a result of Microsoft's infringement, NetLens is entitled to damages adequate to compensate for Microsoft's infringement, but in no event less than a reasonable royalty, together with interest and costs as provided by law. NetLens has complied with 35 U.S.C. § 287, and no marking requirement limits NetLens's recovery.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 9,417,901

42. NetLens realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

43. NetLens owns all rights, title, and interest in U.S. Patent No. 9,417,901, titled "Switch and Method for Guaranteeing QoS of Multi-Tenant Cloud Service," which issued on August 16, 2016. A true and correct copy of the 901 Patent is attached as **Exhibit 3**.

44. The technology disclosed in the 901 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 901 Patent.

45. The 901 Patent is directed to a technological improvement in cloud networking: a flow switch architecture that enforces Quality of Service ("QoS") per tenant and per flow in a

multi-tenant environment. This invention addressed a specific problem rooted in computer networks: ensuring that one tenant's workloads cannot starve another's in a shared virtualized fabric.

46. On information and belief, Microsoft makes, uses, offers for sale, sells, and/or imports products and services ("the 901 Accused Products") that, as developed, maintained, and deployed during and after the issuance of the Asserted Patents, practice the inventions of the 901 Patent. The 901 Accused Products include, without limitation: Azure Virtual Network, Hyper-V Virtual Filtering Platform (VFP), System Center Virtual Machine Manager (SCVMM), Azure Network Controller, and Azure Kubernetes Service (AKS) including Azure CNI, kube-proxy, and Azure SDN fabric. NetLens' contentions include Microsoft's continuing implementations of these products during the relevant infringement period.

47. Microsoft directly infringes the 901 Patent by operating and testing both non-Kubernetes products (e.g., Hyper-V, SCVMM, Azure VFP, Windows Server SDN) and Kubernetes-based products (e.g., AKS, Azure CNI, VFP, kube-proxy). Microsoft induces and contributes to infringement by promoting these products through detailed guides on configuring QoS, network policies, and bandwidth control. The 901 Patent provides a technical improvement in how virtual flows are classified and prioritized, addressing the problem of multi-tenant QoS enforcement in cloud-scale environments.

48. Moreover, Microsoft directly infringes the 901 Patent by configuring and operating these 901 Accused Products so that QoS data is stored per tenant and per flow, enforced by Hyper-V VFP at the virtual switch level, and managed by Azure Network Controller or SDN fabric to allocate resources across tenants.

49. Microsoft also knowingly and intentionally induces infringement of the 901 Patent. Microsoft provides customers with instructions and documentation encouraging infringing use of its Azure networking and QoS features, despite knowledge of the 901 Patent.

50. Microsoft further contributorily infringes the 901 Patent by supplying the 901 Accused Products that are material to practicing the inventions, are not staple articles of commerce, and lack substantial non-infringing uses.

51. The 901 Accused Products satisfy each and every limitation of at least one claim of the 901 Patent. Exemplary claim charts mapping claim elements to the 901 Accused Products are attached as **Exhibit 4A** and **Exhibit 4B**. NetLens reserves the right to identify additional claim mappings.

52. Microsoft's infringement has injured NetLens, entitling it to damages adequate to compensate for such infringement, together with interest and costs.

53. By making, using, offering for sale, selling, and/or importing the 901 Accused Products, Microsoft has injured NetLens and is liable for infringement under 35 U.S.C. § 271. As a result of Microsoft's infringement, NetLens is entitled to damages adequate to compensate for Microsoft's infringement, but in no event less than a reasonable royalty, together with interest and costs as provided by law. NetLens has complied with 35 U.S.C. § 287, and no marking requirement limits NetLens's recovery.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 9,705,745

54. NetLens realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

55. NetLens owns all rights, title, and interest in U.S. Patent No. 9,705,745, titled "System and Method for Virtualizing SDN-Based Network Monitoring," which issued on July 11, 2017. A true and correct copy of the 745 Patent is attached as **Exhibit 5**.

56. The technology disclosed in the 745 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 745 Patent.

57. The 745 Patent is directed to a technological improvement in network monitoring for software-defined networks ("SDN"). The patent discloses the creation of "virtual monitors," including both basic and user-defined monitors, which can be dynamically instantiated using allocated computing resources. This addressed the technical problem of monitoring high-volume network traffic without exhausting system capacity.

58. On information and belief, Microsoft makes, uses, offers for sale, sells, and/or imports products and services ("the 745 Accused Products") that, as developed, maintained, and deployed during and after the issuance of the Asserted Patents, practice the inventions of the 745 Patent. The 745 Accused Products include, without limitation: Azure Packet Monitor (PktMon), SCVMM monitoring, Windows Admin Center, Azure Monitor, Azure Kubernetes Service (AKS), Istio, Envoy proxies, Prometheus, Fluentd, and Container Insights. NetLens' contentions include Microsoft's continuing implementations of these products during the relevant infringement period.

59. Microsoft infringes the 745 Patent by operating and supplying non-Kubernetes SDN monitoring tools (e.g., SCVMM, Network Controller, Windows Admin Center Packet Monitoring, and PktMon) and Kubernetes-based monitoring (e.g., AKS, Container Insights, Prometheus, OpenTelemetry). Microsoft induces infringement by encouraging customers to enable both default monitoring agents and custom Prometheus exporters. The 745 Patent provides a

technical solution to dynamically creating both basic and user-defined monitors in SDN environments—an unconventional approach beyond routine packet capture.

60. Moreover, Microsoft directly infringes by configuring its 745 Accused Products so that Packet Monitor, Envoy proxies, and related tools act as basic virtual monitors, while user-defined Prometheus metrics and Fluentd collection function as user-defined monitors, with resources allocated dynamically by SCVMM or Kubernetes resource management.

61. Microsoft also knowingly induces infringement by encouraging customers to deploy these monitoring features through documentation, tutorials, and default configurations.

62. Microsoft further contributorily infringes the 745 Patent by supplying monitoring components that are material to practicing the invention, not staple articles of commerce, and without substantial non-infringing uses.

63. The 745 Accused Products satisfy each and every limitation of at least one claim of the 745 Patent. Exemplary claim charts mapping claim elements to representative 745 Accused Products are attached as **Exhibit 6A** and **Exhibit 6B**. NetLens reserves the right to identify additional claim mappings.

64. Microsoft's infringement has injured NetLens, entitling it to damages adequate to compensate for such infringement, together with interest and costs.

65. By making, using, offering for sale, selling, and/or importing the 745 Accused Products, Microsoft has injured NetLens and is liable for infringement under 35 U.S.C. § 271. As a result of Microsoft's infringement, NetLens is entitled to damages adequate to compensate for Microsoft's infringement, but in no event less than a reasonable royalty, together with interest and costs as provided by law. NetLens has complied with 35 U.S.C. § 287, and no marking requirement limits NetLens's recovery.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 10,063,630

66. NetLens realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

67. NetLens owns all rights, title, and interest in U.S. Patent No. 10,063,630, titled "System and Method for Service Orchestration in Distributed Cloud Environment," which issued on August 28, 2018. A true and correct copy of the 630 Patent is attached as **Exhibit 7**.

68. The technology disclosed in the 630 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the 630 Patent.

69. The 630 Patent is directed to a technological improvement in cloud service orchestration. The invention discloses receiving service profiles, generating specifications, setting service flows, and transmitting execution commands to distributed cloud resources. This addressed the need for reliable and declarative orchestration of services across heterogeneous computing environments.

70. On information and belief, Microsoft makes, uses, offers for sale, sells, and/or imports products and services ("the 630 Accused Products") that, as developed, maintained, and deployed during and after the issuance of the Asserted Patents, practice the inventions of the 630 Patent. The 630 Accused Products include, without limitation: Azure Service Fabric, Azure Resource Manager, Azure Monitor, Azure Kubernetes Service (AKS), Kubernetes API Server, YAML manifests, Helm, Kubernetes Services, Ingress controllers, and Istio routing. NetLens' contentions include Microsoft's continuing implementations of these products during the relevant infringement period.

71. Microsoft infringes the 630 Patent by providing non-Kubernetes orchestration tools (e.g., Azure Service Fabric, Application Manifests, ARM Templates) and Kubernetes-based orchestration (e.g., AKS, YAML/Helm manifests, Istio service mesh). Microsoft induces infringement by providing documentation and default templates for customers to deploy services across virtual networks. The 630 Patent improves cloud orchestration by translating high-level service profiles into executable distributed flows across micro-data centers—an advancement beyond conventional schedulers.

72. Moreover, Microsoft directly infringes by configuring its 630 Accused Products so that Service Fabric and Kubernetes receive service profiles (e.g., manifests), analyze them into specifications, establish service flows through orchestration components, and transmit execution commands to virtual machines or pods.

73. Microsoft also knowingly induces infringement of the 630 Patent through documentation and training instructing customers on use of these orchestration features.

74. Microsoft further contributorily infringes the 630 Patent by supplying orchestration components that are material to the claimed invention, not staple articles of commerce, and without substantial non-infringing uses.

75. The 630 Accused Products satisfy each and every limitation of at least one claim of the 630 Patent. Exemplary claim charts mapping claim elements to representative 630 Accused Products are attached as **Exhibit 8A** and **Exhibit 8B**. NetLens reserves the right to identify additional claim mappings.

76. Microsoft's infringement has injured NetLens, entitling it to damages adequate to compensate for such infringement, together with interest and costs.

77. By making, using, offering for sale, selling, and/or importing the Accused Products, Microsoft has injured NetLens and is liable for infringement under 35 U.S.C. § 271. As a result of Microsoft's infringement, NetLens is entitled to damages adequate to compensate for Microsoft's infringement, but in no event less than a reasonable royalty, together with interest and costs as provided by law. NetLens has complied with 35 U.S.C. § 287, and no marking requirement limits NetLens's recovery.

## WILLFULNESS AND INDUCEMENT

78. Microsoft has willfully infringed and continues to willfully infringe at least the 154 Patent. Microsoft has had knowledge of the 154 Patent since at least service of the original Complaint.

79. Despite this knowledge, Microsoft continues to make, use, offer for sale, sell, and import the 154 Accused Products, without license. Microsoft further induces its customers to infringe by publishing detailed documentation and tutorials instructing customers in this District how to deploy and operate the infringing services, including: Install and use the Istio-based service mesh add-on for AKS[12]—instructing deployment of Istiod, Envoy sidecars, and integration with Azure Monitor and Prometheus; Monitor Azure Kubernetes Service (AKS) with Azure Monitor[13]—instructing configuration of Container Insights to collect pod and node metrics from AKS clusters; Configure QoS in Azure Virtual Networks[14]—instructing per-flow and per-VM bandwidth controls through Azure's SDN and VFP; and Use Service Fabric application and service manifests[15]—instructing declarative orchestration of services across Service Fabric clusters.

[12] E.g., https://learn.microsoft.com/en-us/azure/aks/istio-deploy-addon
[13] E.g., https://learn.microsoft.com/en-us/azure/aks/monitor-aks?tabs=cilium
[14] E.g., https://learn.microsoft.com/en-us/azure/virtual-desktop/rdp-quality-of-service-qos
[15] E.g., https://learn.microsoft.com/en-us/azure/service-fabric/service-fabric-application-and-service-manifests

80. By publishing these materials, and on information and belief, hosting workshops in Austin and San Antonio, and providing direct support through in-district personnel, Microsoft has actively encouraged and induced infringement of the Asserted Patents by customers in this District.

## PRAYER FOR RELIEF

WHEREFORE, NetLens respectfully requests that this Court enter:

a. A judgment in favor of NetLens that Defendant has infringed, either literally and/or under the doctrine of equivalents, the 154 Patent, the 901 Patent, the 745 Patent, and the 630 Patent;

b. A permanent injunction prohibiting Defendant from further acts of infringement of the 154 Patent, the 901 Patent, the 745 Patent, and the 630 Patent;

c. A judgment and order requiring Defendant to pay NetLens its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the 154 Patent, the 901 Patent, the 745 Patent, and the 630 Patent;

d. That NetLens is entitled to damages adequate to compensate for Microsoft's infringement, including infringing activities occurring during and after the issuance of the Asserted Patents, but in no event less than a reasonable royalty;

e. That NetLens is entitled to ongoing royalties for Microsoft's continuing infringement and to injunctive relief preventing Microsoft from further unauthorized use of NetLens's patented technologies, which are foundational to cloud orchestration and monitoring;

f. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to NetLens, including without limitation, pre-judgment and post-judgment interest;

g. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to NetLens its reasonable attorneys' fees against Defendant; and

h. Any and all other relief as the Court may deem appropriate and just under the circumstances.

**DEMAND FOR JURY TRIAL**

NetLens, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: October 15, 2025

Respectfully submitted,

*/s/ David L. Hecht*
David L. Hecht
Peter Joon Park (*pro hac vice*)
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 851-6821
dhecht@hechtpartners.com

*Attorneys for Plaintiff*
*NetLens Technologies Inc.*